IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GERALD GURULE,**

        **Plaintiff,**

**v.**                                                **No. CIV-08-1170 JCH/LAM**

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 19)* (hereinafter "*Motion*"). United States District Judge Judith C. Herrera referred the claims raised in the *Motion* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *Order of Reference (Doc. 6)*. The Court has reviewed the *Motion* and Plaintiff's *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Memorandum in Support*") *(Doc. 20)*, *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Response*") *(Doc. 21)*, Plaintiff's *Reply in Support of Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Reply*") *(Doc. 22)*, the pleadings filed in this

---

[1]**Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

1

case and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court recommends that Plaintiff's ***Motion*** be **GRANTED in part** and **DENIED in part**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.  Procedural History

On January 30, 2004, Plaintiff, Gerald Gurule, filed an application for Social Security Disability Insurance Benefits alleging that he became disabled on June 21, 2003. (*R. at 74-76.*) Plaintiff states that he became unable to work "due to a combination of medical impairments including: chronic low back pain, chronic left knee pain secondary to injury and surgical intervention, Gastroesophageal Reflux Disease (GERD); and Dysthymia."[2] ***Memorandum in Support*** *(Doc. 20)* at 2. Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 56-57* and *51-53*, respectively.) Plaintiff requested a hearing (*R. at 47*) and Administrative Law Judge (hereinafter "ALJ") Betty Barbieto conducted a hearing on August 31, 2005. (*R. at 423-53.*) Plaintiff was present and testified at the hearing. (*R. at 428-446.*) Plaintiff was represented by a lay representative at the hearing. (*R. at 426.*)[3] On October 19, 2005, ALJ Barbieto issued a decision denying Plaintiff's application and finding that he is not disabled within the meaning of the Social Security Act. (*R. at 20-27.*) On December 21, 2005, Plaintiff requested that the Appeals Council review ALJ Barbieto's decision (*R. at 37*) and, on September 15, 2006, the Appeals Council issued its decision declining review of ALJ Barbieto's decision, making ALJ

---

[2]A Dysthymic Disorder is characterized by "a chronically depressed mood that occurs for most of the day more days than not for at least 2 years." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 376-77 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV-TR").

[3]Plaintiff's current counsel did not begin representing him until February 28, 2006, which was after ALJ Barbieto had issued her decision. ***Memorandum in Support*** *(Doc. 20)* at 9 and *R.* at 34-35.

Barbieto's decision the final decision of the Commissioner. (*R. at 4-8.*)

On November 13, 2006, Plaintiff filed a complaint in the United States District Court appealing the Appeals Council decision. *See Gurule v. Barnhart*, Civil No. 06-1104 RHS. Upon motion by the Commissioner of Social Security, on June 13, 2007, United States Magistrate Judge Robert H. Scott remanded the case to the Social Security Administration (hereinafter "SSA"), and ordered the Appeals Counsel to return the case to an ALJ to:

> (a) update the medical record; (b) further consider the severity of Plaintiff's mental impairment pursuant to 20 C.F.R. § 404.1520a; (c) reevaluate Plaintiff's residual functional capacity [hereinafter "RFC"] pursuant to Social Security Ruling 96-8p, and include the mental and physical limitations resulting from Plaintiff's severe impairments into the established RFC; and (d) obtain supplemental vocational expert testimony.

(*R. at 539-40.*) On January 22, 2008, a second hearing was conducted by ALJ Ben Willner. (*R. at 476-508*.)[4] Plaintiff was present at the hearing and testified. (*R.* at 481-496) and was represented by his current counsel (*R. at 479.*) On August 22, 2008, ALJ Willner issued a decision denying Plaintiff's applications and finding that he is not disabled under the Social Security Act because he could perform sedentary jobs that exist in significant numbers in the national economy. (*R. at 462-72.*) Plaintiff requested that the Appeals Council review ALJ Willner's decision (*R. at 458*), and, on April 20, 2009, the Appeals Council sent a letter to Plaintiff's counsel stating that, because Plaintiff did not submit exceptions to ALJ Willner's decision within the 30-day period,[5]

---

[4] Plaintiff filed a second application for disability insurance benefits on February 23, 2006 (*R. at 679*; *see also R. at 462*), which was denied at the initial and reconsideration levels (*R. at 667-70* and *662-64*, respectively), and combined with Plaintiff's first application for the January 22, 2008 hearing and ALJ Willner's decision (*R. at 480* and *462*.)

[5] Pursuant to 20 C.F.R. § 404.984(b), when a case is on remand from the district court the ALJ's decision becomes the final decision of the Commissioner unless the Appeals Council assumes jurisdiction of the case based on the plaintiff filing written exceptions to the ALJ's decision. Those exceptions are due within 30 days of receipt of the ALJ's decision. 20 C.F.R. § 404.984(b)(1).

ALJ Willner's decision became the final decision of the Commissioner. (*R. at 454.*) On December 18, 2008, Plaintiff filed his complaint in this action. *See* **Complaint** *(Doc. 1)*.

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

For purposes of disability insurance benefits, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 416.905(a). In light of this definition, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" which has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[6] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[6] 20 C.F.R. § 404, subpt. P, app. 1.

## III.  Plaintiff's Age, Education, Work Experience, Medical History; and ALJ Willner's Decision

Plaintiff was born on February 7, 1971 (*R. at 429*) and was, therefore, 38 years old when ALJ Willner issued his decision (*R. at 454.*).  Plaintiff testified that he graduated from high school, completed a basic electronics course, and completed programs at Central New Mexico in basic computers and digital cameras.  (*R. at 481-83.*)  Plaintiff testified that he served in the U.S. Navy from August 1989 to August 1997 and was honorably discharged.  (*R. at 483.*)  Plaintiff testified that when he was in the Navy he was an "aviation boatswain's mate," which he explained meant that he "hooked up aircraft to the catapults and launched them off the flight deck."  (*R. at 484.*)  Plaintiff also testified that he worked at the Veterans Administration (hereinafter "VA") hospital in Albuquerque as a transfer clerk, where he carried boxes of medical records and filed them on shelves.  (*R. at 485-86.*)  Plaintiff stated that he left that job in June 2003 because he tore his anterior cruciate ligament (hereinafter "ACL") in his left knee for the second time and was unable to get the light duty work that his doctor said he needed, so he went to 100% unemployable status through the VA.  (*R. at 486*; *see also R. at 354, 346-52, 341-45, 336-40.*)  Plaintiff testified that he was looking into the Department of Vocational Rehabilitation program for help in getting a job.  (*Id.*)  Plaintiff also stated that he worked at a wireless company, as a security officer, as a custodian (*R. at 495*), as a grocery store clerk (*R. at 85*), and as an electronic tech and a park ranger (*R. at 694*).

Plaintiff's medical records document treatment through the VA (*R. at 158-335, 365-420, 549-615, 632-54, 747-49, 751-949, 961-995,* and *1020-1160*).  Plaintiff's medical records include: two Residual Functional Capacity Assessments - one by Alice Davidson on March 17, 2004 (*R. at 133-42*) and one by David P. Green on April 11, 2006 (*R. at 996-1003*); a Medical Assessment on form SSA-2506-BK by E. Chiang, M.D. on September 20, 2004 (*R. at 143-57*); a Request for

6

Medical Advice by Bonnie Wilson on April 6, 2006 (*R. at 1004* and *1019*); a Psychiatric Review Technique by JLeRoy [sic] Gabaldon (*R. at 1005-18*); a Medical Report (12.04 Affective Disorders) by Thomas Baechle, APRN-BC on May 9, 2006 (*R. at 627*); a Medical Assessment of Ability to do Work-Related Activities (Physical) conducted by John E. Collins, PA-C on May 25, 2006 (*R. at 421-22*); a Psychological/Vocational Evaluation by Clifford O. Morgan, Ph.D. on July 12, 2006 (*R. at 616-26* and *R. at 950-60*); and a Medical Assessment of Ability to do Work-Related Activities by A. Chada, M.D. on February 28, 2008 (*R. at 629* (Physical) and *630* (Non-Exertional)). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, ALJ Willner found that Plaintiff had not been engaged in substantial gainful activity since June 21, 2003, the alleged onset date of his disability. (*R. at 464.*) At step two, the ALJ found that Plaintiff's "impairments due to status post left anterior cruciate ligament reconstruction times two, post-laminectomy syndrome, and gastroesophageal reflux disorder (GERD)" are severe, and that his "impairment due to an affective disorder . . . is not severe, considered separately or in combination with any other disorder." (*R. at 464-65.*) At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listings of impairments found in 20 C.F.R. § 404, subpt. P, App. 1. (*R. at 466-67.*) ALJ Willner stated that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements for disorders of the spine because "[p]hysical examinations have not shown evidence of nerve root compression characterized by neuro-anatomic distribution of pain or limitation of motion of the spine." (*R. at 467.*) ALJ Willner further stated that, even though Plaintiff alleges low-back pain, his straight leg raising tests are negative, he has good range of motion of his spine, and he is generally reported as able to ambulate normally. (*Id.*)

Before step four, ALJ Willner determined that Plaintiff has the RFC to perform a limited range of sedentary work. (*Id.*) ALJ Willner stated that Plaintiff's "daily activities, including caring for his personal needs and his home, suggest the ability to engage in sedentary exertional level work activities." (*R. at 469.*) ALJ Willner discussed the weight he accorded Plaintiff's treating and consultative physicians (*R. at 469-70*), and listed Plaintiff's VA disability determinations (*R. at 470-71.*) At step four ALJ Willner found that Plaintiff is unable to perform any past relevant work. (*R. at 471.*) ALJ Willner, therefore, proceeded to step five of the sequential evaluation.

At the fifth and final step, ALJ Willner found that, considering Plaintiff's age, education, work experience, and age, jobs exist in significant numbers in the national economy that he could perform. (*R. at 471.*) ALJ Willner stated that Plaintiff's ability to perform all or substantially all of the requirements of sedentary-level work was impeded by limitations, so he asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*R. at 472.*) ALJ Willner stated that the VE "testified that given all of these factors [Plaintiff] would be able to perform the requirements of representative occupations such as bench hand . . .; order clerk . . .; and surveillance system monitor." (*R. at 472.*) In addition, ALJ Willner stated that the VE testified that all three of these jobs allow for a sit/stand option, meaning the job can be performed sitting or standing at will. (*Id.*) ALJ Willner stated that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*) In conclusion, ALJ Willner stated that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy and is not disabled under the Social Security Act and Regulations. (*Id.*)

## **IV.  Analysis**

Plaintiff contends that the ALJ Willner's decision should be remanded for four reasons: First, because ALJ Willner did not consider Plaintiff's VA disability determination; second, because ALJ Willner incorrectly ruled that Plaintiff did not suffer a severe mental impairment under the *de minimus* standard at step two; third, because ALJ Willner's credibility assessment fails to adequately evaluate Plaintiff's subjective pain complaints; and fourth, because ALJ Willner failed to include all of Plaintiff's limitations in his step-five findings.  *See **Memorandum in Support** (Doc. 20)* at 1, 11-31.  As relief, Plaintiff asks the Court to reverse ALJ Willner's decision or, alternatively, to remand the case for a new hearing before an ALJ.  *Id.* at 31.  Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence.  *See **Response** (Doc. 21)* at 4-17.

### *A.  ALJ Willner's Consideration of Plaintiff's VA Disability Determination*

Plaintiff states that ALJ Willner failed to weigh the VA determination that Plaintiff had been deemed unemployable under the VA disability system.  *See **Memorandum in Support** (Doc. 20)* at 11.  Plaintiff states that ALJ Willner only addressed the "VA determination in a historical, superficial and passive manner," even though the VA's rationale provided probative information regarding Plaintiff's functioning, "particularly with respect to mental functioning, which the ALJ determined was not a 'severe' impairment." (*R. at 13.*)  Plaintiff contends that failure to discuss the weight he afforded the VA determination and the reasons for that weight is legal error.  (*R. at 13-14.*)  Defendant responds that he is not bound by the disability decisions of other governmental and non-governmental agencies, and that ALJ Willner properly considered the VA's disability rating and explained why it was not entitled to conclusive weight.  ***Response** (Doc. 21)* at 4-6.

While "another agency's determination of disability is not binding on the Social Security Administration . . . , it is evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005). In *Grogan*, the Tenth Circuit held "that the ALJ's failure to discuss the significance of the VA's disability evaluation in concluding that [the plaintiff] had not met the "de minimus" required showing of a severe impairment at step two was reversible error." *Id.* at 1263 (citations omitted). "Although the Tenth Circuit has not stated what weight a VA disability determination should receive, it is clear that [the VA rating] should receive some weight, and a passing reference will not suffice." *McClean v. Barnhart*, No. 02-4085-JAR, 2004 WL 1212045, *3 (D. Kan. May 20, 2004) (unpublished) (citation omitted).

At step two ALJ Willner found that Plaintiff's "impairments due to status post left anterior cruciate ligament reconstruction times two, post-laminectomy syndrome, and [GERD]" are severe, and that his "impairment due to an affective disorder . . . is not severe." (*R. at 464-65*.) In making his decision at step two that Plaintiff's affective disorder is not severe, ALJ Willner does not discuss Plaintiff's VA disability determination regarding that impairment.[7] At step four, ALJ Willner reviewed the chronology of Plaintiff's VA disability ratings (*R. at 470*), then simply stated that he considered the VA examining physicians' medical evidence "to the extent that it is relevant," but that the VA's disability determination is not binding on the SSA. This is an inadequate explanation of why ALJ Willner did not find the disability determinations persuasive. *Compare Goodwin v. Astrue*, No. CIV-07-688-R, 2008 WL 1767084, *1-2 (W.D. Okla. April 16, 2008) (unpublished)

---

[7]On September 3, 2003, the VA determined that Plaintiff was 30% disabled for his dysthymic disorder as of April 1, 2003 (*R. at 346-49*), and on December 19, 2003, the VA determined that Plaintiff's impairments, including his dysthymia, precluded him from substantial gainful activity and combined to an 80% disability (*R. at 337*).

(remanding ALJ's decision because, while she mentioned the VA's 70% disability determination and stated that it is not binding on the SSA, she failed to discuss the significance of the VA's disability evaluation), *with McQueeny v. Barnhart*, No. 03-2338-JWL, 2004 WL 34877, *6 n.2 (D. Kan. Jan. 5, 2004) (unpublished) (upholding the ALJ's decision rejecting the VA's 100% disability determination because the ALJ "explained at some length why he was not according any weight to the VA's determination"). While Defendant states in his *Response* that Plaintiff's VA disability determinations are unpersuasive because Plaintiff continued to work when he had an 80% disability rating and he was given a 100% disability rating because the VA had no light duty work available (*Response (Doc. 21)* at 5), the Court cannot supply this explanation to support the ALJ's decision when it is not apparent from the decision itself. *Grogan*, 399 F.3d at 1263 ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (citations omitted). The Court, therefore, finds that it was legal error for ALJ Willner to fail to consider Plaintiff's VA disability determination regarding Plaintiff's dysthymia at step two and to fail to explain why he did not find it persuasive.

### B. ALJ Willner's Finding Regarding Plaintiff's Mental Impairment

Plaintiff next contends that ALJ Willner incorrectly ruled that Plaintiff did not suffer a severe mental impairment under the *de minimus* standard at step two. *Memorandum in Support (Doc. 20)* at 14. Plaintiff states that evidence in the record supports a finding that Plaintiff's mental impairment is severe (*id.* at 14-21), and states that "[t]he ALJ should be required to examine this evidence upon remand" (*id.* at 21). Defendant states in response that the ALJ properly considered the evidence in the record in making his determination at step two. *Response (Doc. 21)* at 6-10.

When determining whether a claimant has a mental disorder, an ALJ must follow a two-step procedure: (1) evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether he or she has a medically determinable mental impairment; and (2) evaluate the impact of that mental impairment on the claimant's ability to function. *Grogan*, 399 F.3d at 1264 (citation omitted). In making his or her decision, the ALJ must discuss "the evidence supporting his decision, [as well as] the uncontroverted evidence he chooses not to rely upon [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted).

ALJ Willner found that Plaintiff's "medically determinable mental impairment of dysthymia does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore not severe." (*R. at 466.*) In making his decision, ALJ Willner relied on Plaintiff's testimony regarding his activities and statements to his therapist (*R. at 465-66.*) ALJ Willner concluded that Plaintiff's mild limitations in daily living, social functioning, and concentration, and his lack of any episodes of decompensation, led to a finding of a nonsevere impairment. (*R. at 466.*) Later in his decision, ALJ Willner states that he gave no weight to the opinion of Thomas Baechle, APRN-BC, regarding Plaintiff's marked limitations in daily living and social functioning, and ALJ Willner explained why the evidence in the record controverted Mr. Baechle's opinion and instead supported a finding that Plaintiff is independent in daily activities and his "limitations are due to physical problems, not depression." (*R. at 470.*) The Court finds that the ALJ's explanation of why he did not rely on Mr. Baechle's opinion is adequate because he provided support for his rejection of the opinion.

ALJ Willner also mentioned the consultative psychological examination conducted by Clifford Morgan, Ph.D. wherein he diagnosed Plaintiff with a "depressive disorder" (*R. at 470*), and

12

ALJ Willner stated that he gave "great weight to Dr. Morgan's opinion that the claimant is capable of working, although the requirement of retraining is not an issue in Social Security disability." (*Id.*) The ALJ fails to provide any support for his implicit rejection of the remainder of Dr. Morgan's opinion, including his assessment of Plaintiff's Global Assessment of Functioning at 55.[8] This rejection of the majority of Dr. Morgan's report without explaining why he is doing so or providing support from the record for that decision is legal error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted). In addition, ALJ Willner failed to discuss the VA disability determination regarding Plaintiff's dysthymia, which, as discussed in Section IV.A. above, an ALJ is required to discuss at a step-two determination of severe disability. ALJ Willner also failed to discuss the records of VA psychiatrist Leo Kreuz, M.D. who diagnosed Plaintiff as having "dysthymia, secondary to already existent service-connected disabilities" and rating Plaintiff's GAF at 50 (*R. at 294*), or the psychiatric evaluation by Virginia Porterfield, M.D., diagnosing Plaintiff with dysthymic disorder and rating Plaintiff's GAF at 60 (*R. at 392*). The ALJ was required to discuss this evidence and explain why he chose not to rely on it, especially in light of the fact that the ALJ was specifically ordered to "further consider the severity of Plaintiff's mental impairment pursuant to 20 C.F.R. § 404.1520a" in the United States District Court's remand of Plaintiff's appeal of the ALJ Barbieto's decision (*R. at 539*). *See Clifton*, 79 F.3d at 1010 (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). The Court recommends

---

[8]The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning. DSM-IV-TR at 32. A GAF score within the range of 41 to 50 indicates "serious symptoms," such as "suicidal ideation, severe obsessional rituals, or frequent shoplifting," or "serious impairment in social, occupational, or school functioning," and a score between 51 and 60 indicates "moderate difficulty in social, occupational or school functioning (*e.g.* no friends and unable to keep a job). *Id.* at 34.

13

that on remand the ALJ discuss the following evidence relative to Plaintiff's mental impairment: (1) Dr. Morgan's opinion; (2) Plaintiff's VA disability determination; (3) Dr. Kreuz's records; and (4) Dr. Porterfield's psychiatric evaluation.

### C.  Credibility Assessment Regarding Plaintiff's Symptoms

Next, Plaintiff contends that ALJ Willner's credibility assessment is unsupported by substantial evidence and fails to adequately evaluate Plaintiff's subjective pain complaints. ***Memorandum in Support*** *(Doc. 20)* at 21.  Plaintiff states that the ALJ's stated reasons for his credibility assessment "are no more than conclusions in the guise of findings and an inaccurate statement of substantial medical evidence." *Id.* at 22.  Defendant responds that the ALJ properly considered evidence in the record in making his credibility assessment regarding Plaintiff's complaints of pain.  ***Response*** *(Doc. 21)* at 11-14.

At the outset, the Court notes that while Plaintiff states that he is challenging the ALJ's credibility assessment of his complaints of pain, Plaintiff proceeds to argue that the ALJ failed to find a pain-producing impairment relating to his back injuries. ***Memorandum in Support*** *(Doc. 20)* at 22-23.  These are two separate arguments.  When a claimant alleges a pain producing impairment, the ALJ must conduct the three-part test Plaintiff refers to in his ***Memorandum in Support*** *(Doc. 20)*, which is: "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all of the evidence, claimant's pain is in fact disabling." *White v. Barnhart*, 287 F.3d 903, 909 n.3 (10th Cir. 2001) (citation omitted).  Plaintiff argues that ALJ Willner failed to follow this procedure; however, ALJ Willner found that Plaintiff's pain from his back injuries is a severe disability.  (*R. at 464*) (stating that "[t]he Claimant has impairments due to . . . post-laminectomy syndrome" which is the

14

procedure Plaintiff underwent for his back pain). Plaintiff's challenge to the ALJ's credibility assessment regarding his pain, therefore, is properly analyzed under the standard that an ALJ's decision, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at *4; *see also White*, 287 F.3d at 909 ("[C]redibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence.") (citation and internal quotation marks omitted).

ALJ Willner has sufficiently supported his finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC assessment. (*R. at 469.*) ALJ Willner cites to evidence in the record that supports his credibility finding, such as: (1) Plaintiff would have likely continued working in June 2003 if light duty work had been available (*R. at 469* (citing *R. at 486*)); (2) Plaintiff has received only conservative therapy for his back pain (*R. at 469* (citing *R. at 805, 809*)); (3) Plaintiff's straight leg raise tests are negative, he has good range of motion of his spine, and he can ambulate normally (*R. at 469* (citing *R. at 805*)); and (4) Dr. Chadha stated that Plaintiff's back pain was probably intermittent (*R. at 469* (citing *R. at 630*). ALJ Willner, therefore, concludes that Plaintiff's daily activities are inconsistent with his pain allegations. (*R. at 469.*) The Court finds that evidence in the record supports the ALJ's finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with his RFC assessment, especially given the fact that Plaintiff does not challenge his RFC assessment. Therefore, because the ALJ provided specific reasons for his finding on Plaintiff's

15

credibility and because those findings are supported by the evidence in the record, the Court finds no reason to overturn this finding.

### D.  Failure to Include all of Plaintiff's Limitations at Step Five

Finally, Plaintiff claims that the ALJ's hypothetical to the VE was deficient because it omitted some of Plaintiff's limitations.  ***Memorandum in Support*** *(Doc. 20)* at 28-31.  Plaintiff claims that the ALJ's hypothetical left out limitations supported by his counselor, Thomas Baechle, APRN-BC, who found that Plaintiff has marked restrictions of activities in daily living and marked difficulties in maintaining social functioning.  *Id.* at 29 (citing *R. at 907*).  In addition, Plaintiff claims that the ALJ should have included limitations supported by the opinion of John Collins, PA-C, who found limitations in Plaintiff's ability to concentrate, make decisions, and that Plaintiff would need to rest more often or for longer periods.  ***Memorandum in Support*** *(Doc. 20)* at 29-30.  Defendant states in his response that the ALJ's hypothetical correctly contained all of Plaintiff's limitations that are supported in the record, and that the ALJ also fully explained why he discounted Mr. Baechles' and Mr. Collins' opinions.  ***Response*** *(Doc. 21)* at 14-17.

An ALJ must include impairments that are supported by the record in his or her hypothetical questions to a VE.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).  The ALJ here asked the VE whether jobs exist in the national economy for an individual who can occasionally lift 20 pounds, can frequently lift ten pounds, can stand and/or walk with normal breaks for two hours in an eight-hour workday, can sit with normal breaks for six hours in an eight-hour workday, and with limitations in regard to lifting, carrying, climbing, balancing, stooping, kneeling, crouching, crawling, and exposure to extreme cold, dangerous machinery and unprotected heights.  (*R. at 499*). The Court finds that these limitations encompass many of the restrictions found by Mr. Baechle and Mr. Collins because they include restrictions on Plaintiff's activities, ability to concentrate and make

16

decisions, and need for breaks. To the extent ALJ Willner's hypothetical did not include any of the restrictions found by Mr. Baechle or Mr. Collins, such as Plaintiff's social functioning or need for more frequent or longer breaks, the record supports the ALJ's decision not to rely on their opinions. The ALJ stated that he gave no weight to Mr. Baechle's opinion that Plaintiff had marked limitations in daily activities and social functioning because the record supported a finding that Plaintiff is independent in his daily living, socializes with friends and family, and recently completed computer classes with no reported difficulties. (*R. at 470.*) The ALJ stated he gave limited weight to Mr. Collins' forms because he found them to be identical to Dr. Chadha's forms which the ALJ found were contradicted by Dr. Chadha's own treatment notes, and because the opinions merely restate the claimant's subjective complaints. (*Id.*) Because the ALJ's hypothetical included most of the impairments found by Mr. Baechle and Mr. Collins, and because the ALJ properly included only those limitations in his hypothetical that are supported by the record, the Court finds that the hypothetical complies with relevant Social Security laws and regulations.

## V.  Conclusion

For the reasons stated above, the Court recommends that the Commissioner's decision be remanded: (1) to consider Plaintiff's VA disability determination regarding Plaintiff's dysthymia at step two, and, if the ALJ on remand finds Plaintiff's VA disability determination to be unpersuasive, to explain why; and (2) to consider additional evidence relating to Plaintiff's mental impairment, including Dr. Morgan's opinion, Dr. Kreuz's records, and Dr. Porterfield's psychiatric evaluation. The Court recommends denying Plaintiff's motion to the extent it asks for a ruling of legal error in the ALJ's credibility assessment and hypothetical presented to the VE.

## VI.  Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 19*) be **GRANTED in part** and **DENIED in part**, and the Commissioner's decision be **REMANDED**.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**